UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NUMBER: 3:02CR341 (EBB) |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL HERNANDEZ, | ) | |
| DAVID BROWN, | ) | |
| RICHARD BROWN, and | ) | |
| NELSON DATIL, | ) | |
| | ) | |
| Defendants. | ) | April 11, 2005 |

## GOVERNMENT'S TRIAL MEMORANDUM

The Government, by the undersigned Assistant United States Attorneys, respectfully submits this trial memorandum concerning legal and evidentiary issues that may arise during the trial in the above-captioned case that is currently set for jury selection April 12, 2005 with the presentation of evidence to begin on April 13, 2005.

Respectfully submitted,
KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JONATHAN BIRAN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. ct 21922
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. ct25713

157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
TEL. 203.821.3700

**STATUS OF THE CASE**

In October 2004, a grand jury returned a 22-count Third Superseding Indictment ("Indictment") in the above-captioned case. On April 6, 2005, the Government moved to dismiss Count 22, leaving the remaining 21 counts. Count 1 of the Indictment charges all defendants with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. Counts 2 through 21 charge various defendants with wire fraud, in violation of 18 U.S.C. § 1343.

The case is scheduled for trial before the Court on April 12, 2005 for jury selection with the evidence to begin April 13, 2005. The Government anticipates that its direct case will last approximately 12 trial days.

**SUMMARY OF THE SCHEME AND ARTIFICE TO DEFRAUD**

As described in the Indictment, defendant Shoreline Motors Corporation operated an automobile dealership in Branford, Connecticut, known as Shoreline Mitsubishi. The remaining individual defendants were the General Manager and several managers and salespersons at Shoreline Mitsubishi. The Indictment alleges a wide-ranging scheme to defraud Mitsubishi Motors Credit of America, Inc. ("Mitsubishi Credit" or "MMCA") of Cypress, California, as well as numerous customers of Shoreline Mitsubishi. In particular, the defendants allegedly submitted false customer credit information to Mitsubishi Credit by fax and, later, via the Internet using Daybreak Lending Software. Most commonly, the defendants inflated the customers' incomes above the truthful income figures that the customers had provided to the dealership. The false credit applications were submitted to Mitsubishi Credit in order to deceive Mitsubishi Credit concerning the customers' income and other material information, and thereby

-2-

to induce Mitsubishi Credit to approve the extension of credit to customers of Shoreline Mitsubishi.  The evidence at trial will show that the customers would not have qualified for automobile financing at all or for the amounts approved by Mitsubishi Credit had the fraudulent information not been provided to Mitsubishi Credit.  The evidence also will show that Shoreline Mitsubishi profited from the sales of the automobiles in question, that the individual defendants received salaries and commissions based on the sales and, as such, benefitted financially from the fraud.

## THE INDICTMENT

The Government's evidence at trial will establish beyond a reasonable doubt that the defendants, as charged, committed all 21 offenses as charged in the Indictment.  The evidence will show that the defendants engaged in a scheme and artifice to defraud Mitsubishi Credit and the customers of Shoreline Mitsubishi ("Customers") by use of interstate wires and caused losses of millions of dollars.  The defendants engaged in a conspiracy in violation of 18 U.S.C. § 371, and committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343.

The counts charged in the Indictment are set out in the tables below for the convenience of the Court.  All of the defendants are named in Count 1, the conspiracy count.  Defendant Angel Hernandez is charged in all of the 20 substantive wire fraud counts.  The remaining defendants are charged in particular substantive counts as set forth below.

**COUNT 1**
(18 U.S.C. § 371)
**CONSPIRACY**

| Count | Defendants | Date | Description |
|-------|-----------|------|-------------|
| 1 | ANGEL HERNANDEZ; DAVID BROWN, RICHARD BROWN, NELSON DATIL | Feb. 2000 - July 2002 | Conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 |

**COUNTS 2-21**
(18 U.S.C. §§ 1343, 2)
**WIRE FRAUD**

On or about the dates listed for each count below, the defendants listed for each particular count transmitted or caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, and sounds, for the purpose of executing the above-described scheme and artifice as follows:

| Count | Defendants | Date | Description of the Wire |
|-------|-----------|------|-------------------------|
| 2 | ANGEL HERNANDEZ | 1/25/01 | Customer application of J.L. sent to MMCA by wire in connection with the purchase of a 2001 Mitsubishi Diamante |
| 3 | ANGEL HERNANDEZ | 4/5/01 | Customer application of J.S. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Galant |
| 4 | ANGEL HERNANDEZ | 4/11/01 | Customer application of O.M. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Montero |

| 5 | ANGEL HERNANDEZ | 5/2/01 | Customer application of MICHAEL RIVERA, F.B. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Montero |
|---|---|---|---|
| 6 | ANGEL HERNANDEZ | 6/5/01 | Customer application of M.P. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Galant |
| 7 | ANGEL HERNANDEZ | 7/30/01 | Customer application of K.M./M.M. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Montero |
| 8 | ANGEL HERNANDEZ | 8/7/01 | Customer application of G.V./W.V. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Galant |
| 9 | ANGEL HERNANDEZ | 8/11/01 | Customer application of E.R./N.O. sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Galant |
| 10 | ANGEL HERNANDEZ, DAVID BROWN | 9/18/01 | Customer application of G.M./L.B. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 11 | ANGEL HERNANDEZ, RICHARD BROWN | 9/24/01 | Customer application of A.R.#1/ A.R.#2 sent to MMCA by wire, in connection with the purchase of a 2001 Mitsubishi Galant |
| 12 | ANGEL HERNANDEZ, RICHARD BROWN | 9/24/01 | Customer application of A.R.#2/T.N. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Lancer |
| 13 | ANGEL HERNANDEZ | 10/30/01 | Customer application of M.V./F.V. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 14 | ANGEL HERNANDEZ | 11/3/01 | Customer application of P.T./A.T. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Montero |
| 15 | ANGEL HERNANDEZ, DAVID BROWN | 11/27/01 | Customer application of P.B./M.B sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |

| 16 | ANGEL HERNANDEZ | 12/11/01 | Customer application of I.S.#1/T.M. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Montero |
| 17 | ANGEL HERNANDEZ, RICHARD BROWN | 1/12/02 | Customer application of R.S.#2/M.A. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 18 | ANGEL HERNANDEZ, RICHARD BROWN | 1/2/02 | Customer application of D.F./A.B. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 19 | ANGEL HERNANDEZ, NELSON DATIL | 1/31/02 | Customer application of B.M./C.M. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 20 | ANGEL HERNANDEZ, NELSON DATIL | 4/16/02 | Customer application of J.B. sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |
| 21 | ANGEL HERNANDEZ, DAVID BROWN | 4/30/02 | Customer application of P.D./G.D.#1 sent to MMCA by wire, in connection with the purchase of a 2002 Mitsubishi Galant |

## STATUS OF DEFENDANTS

All defendants are currently released on bond with conditions and are being monitored by the U.S. Probation Office.

## STATUS OF DISCOVERY

At this point, the Government is not aware of any remaining discovery issues. The Government has provided defendants with the materials to which they are entitled, and has continued to meet its obligations, including providing any newly discovered materials covered by the Jencks Act, Brady, and Giglio.

On April 1, 2005, the Government prepared packages of documents and CD-ROMs that provided counsel for the defendants with the vast majority of the Government's trial exhibits as well as early Jencks materials.[1] As any new material is received by the Government, the Government will of course produce it to the defendants.

## ANTICIPATED EVIDENTIARY ISSUES

### A.    The Government Has Proposed Stipulations For Admissibility Of Evidence

The Government has proposed to the defendants several stipulations concerning the admissibility of most of the Government's exhibits. At this time the Government does not know if all four defendants will enter into some or all of the proposed stipulations. The Government believes that these stipulations will eliminate the need for testimony by a number of record custodians. Given that many of the exhibits at issue in the proposed stipulations are business records, the stipulations if agreed to will save the parties a significant amount of trial time. It is

---

[1]    This case has been an open file matter since its inception.

the position of the United States that these documents are admissible as exhibits in full and the

Government will seek to have them summarily introduced prior to testimony about them.

   B.    Admission of Evidence Pursuant to Fed. R. Evid. 902(11)

   To the extent that the parties are unable to agree on the admissibility of the documents

covered by the above-described stipulations, the Government will seek to admit the exhibits

through certificates of authenticity pursuant to Fed. R. Evid. 902(11).  These documents consist

of business records that were obtained from one of the following four sources: (i) from Shoreline

Mitsubishi by way of a search warrant executed in September 2002 (Bates Stamped "USAO");

(ii) from MMCA by way of a subpoena (Bates Stamped "MMCA"); (iii) from Shoreline Motors

Corporation through means other than a search warrant (Bates Stamped "SMC"); and (iv) from

the radio station Hot 93.7 FM, pursuant to subpoena.  It is the Government's position that all of

these records are admissible, either as business records, as documents having independent legal

significance (e.g. automobile purchase contracts), as statements of the defendants or

coconspirators, or in some cases all of the above.  Accordingly, the Government will seek to have

them summarily introduced at the beginning of the Government's case-in-chief pursuant to Fed.

R. Evid. 902(11), so as to save the Court's time and the jury's time, and to allow the presentation

of evidence in an orderly and logical fashion.

   C.    Presentation of Evidence on Computer Monitors

   The United States intends to present documentary evidence on computer monitors placed

throughout the courtroom.  The monitors will display documents to the Court, the witnesses, at

counsel table, and when the evidence has been admitted, the evidence will be shown on such

monitors to the jury.  The use of documentary evidence displayed on the computer monitors will

significantly lessen the need for copies of documents to be distributed to the jurors or for the jurors to handle multi-volume jury books.

The monitors will also be used to display rolling transcripts of radio advertisements that will be played using computer software. This method for presenting the audio evidence is intended to ease the burden on the jurors by dispensing with headphones and transcript books. Both the audio versions of the radio advertisements and a typed version of the transcripts have been provided to the defendants as part of the discovery and there have been no objections to the transcripts.

### D.    Submission of Transcripts of the Radio Advertisements to the Jury

The Government will request that hard copies of the transcripts of the above-described radio advertisements be provided to jurors for their deliberations. It is well settled that transcripts may be given to a jury in a criminal trial for the purpose of aiding the jury in following along if certain precautions are taken to ensure accuracy. United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001) (citing United States v. Carson, 464 F.2d 424, 436-37 (2d Cir. 1972) (approving use of transcript where parties either agreed as to the accuracy of the transcript or offered competing versions to be presented to the jury)). Cf. United States v. Bryant, 480 F.2d 785, 791 & n. 4 (2d Cir. 1973) ("We have approved the procedure of admitting transcripts as an aid in listening to tape recordings where the transcripts were stipulated to be accurate.")

Moreover, transcripts are not merely an "aid" for the jury, but can themselves be evidence, admissible for the purpose of improving the jury's comprehension of the recordings. See United States v. Ulerio, 859 F.2d 1144, 1145 (2d Cir. 1988) (holding "not an abuse of

discretion to admit the transcripts into evidence and to allow the jury to retain the transcripts

during their deliberations") (citing United States v. Marin, 513 F.2d 974, 977 (2d Cir. 1975)

(allowing Spanish-to-English transcript translations into jury room not error)); United States v.

Koska, 443 F.2d 1167, 1169 (2d Cir. 1971).  Accord United States v. Larson, 722 F.2d 139, 144-

45 (5th Cir. 1983) (holding transcripts to be "admissible as evidence subject to the court's

issuance of proper limiting instructions") (emphasis in original).

      E.     Non-Exclusion of Case Agents Who May be the Summary Witness

     The Government plans to call an FBI Special Agent as a summary witness at the end of

its case-in-chief.  Special Agent Christine Martin is the Government's lead case agent and will be

seated at counsel table.  Special Agent Martin is presently expected to be the summary witness at

the conclusion of the Government's case-in-chief.  However, Special Agent Martin is scheduled

to report to a new assignment at the Headquarters of the Federal Bureau of Investigation in

Washington D.C. on May 1, 2005, and thus will not be the Government's summary witness if its

case-in-chief is not concluded by the last week in April.  If Special Agent Martin is not able to

serve as the Government's summary witness, that function will be performed by Special Agent

Alicia Wojtkonski, who is also a member of the investigative team.  Special Agent Wojtkonski is

not expected to testify unless she is needed as the Government's summary witness.  The

Government therefore requests that both Special Agent Martin and Special Agent Wojtkonski be

permitted to remain in the courtroom throughout the Government's case-in-chief.

     A Government investigative agent, such as Special Agent Martin and Special Agent

Wojtkonski, falls within the exception in Fed. R. Evid. 615(2) for "an officer or employee of a

party which is not a natural person."  "The legislative history of Rule 615 makes it clear that a

governmental investigative agent, even though he [or she] is also a witness, may be designated to sit at the Government counsel's table." United States v. Perry, 643 F.2d 38, 53 (2d Cir. 1981) (finding it proper for agent to sit at counsel's table despite the fact that he was also a witness) (citing S. Rep. No. 1277, 93d Cong., 2d Sess. 26 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7072-73). Accord  United States v. Brown 699 F.2d 585, 594 (2d Cir. 1983); Dewees v. United States, 454 U.S. 835 (1981). Because Agent Martin's (and possibly Agent Wojtkonski's) testimonial role at trial will be, among other things, to summarize the numerous customers' testimonial evidence in light of other voluminous documentary evidence, her presence throughout the trial is essential to her ability to testify effectively and to summarize the evidence. See United States v. Conners, 894 F.2d 987, 991 (8th Cir. 1990) (proper for case agent and expert witness to remain in courtroom, where the witness' presence was essential to their testimony). Thus, neither agent should be excluded from the courtroom during trial pursuant to Fed. R. Evid. 615.

F.    Charts and Summaries

Rule 1006 of the Federal Rules of Evidence states, in pertinent part, that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The purpose of Rule 1006 is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1516 (9th Cir. 1985). A chart or summary is admissible under Rule 1006 if the underlying materials upon which the chart or summary is based are themselves admissible in evidence and are available to the opposing party for inspection. The Second Circuit has "regularly affirmed

the use of such charts." U.S. v. Yousef, 327 F.3d 56, 158 (2d Cir. 2003) (citations omitted).

In this case, the United States intends to introduce a limited number of charts relating to the sale of new and used cars over an extended period of time. Each of these charts will be based upon materials that are admissible. The Government will seek to admit the summary charts concerning the car sales in lieu of the cumbersome underlying sales data that will, without explanation, make less sense to the jury. Draft copies of the charts as well as the underlying data have been provided to counsel for the defendants well in advance of trial. Final versions of the summary charts are to be provided to counsel on April 11, 2005.

It has long been the rule that the trial court in its discretion may allow the presentation of summary evidence to guide and assist the jury in understanding and judging the factual controversy. United States v. Skalicky, 615 F.2d 1117, 1121-22 (5th Cir. 1980). As the Honorable Judge Weinstein recently articulated, "Subject to Rule 403, with somewhat more stringent control in jury trials, pedagogical aids should generally be admitted as evidence. They can be helpful to the court's understanding of the complex and voluminous amount of evidence presented. . . . [T]his evidence should also be admitted as evidence in jury trials if it satisfies the requisites of Rules 402 and 403 of the Federal Rules of Evidence." Verizon Directories Corp. v. Yellow Book USA, Inc., 331 F.Supp.2d 136, 142 (E.D.N.Y. 2004). Accord United States v. Bray, 139 F.3d 1104, 1111-12 (6th Cir. 1998) ("Whether designated as 'pedagogical devices' or 'demonstratives,' this material may be admitted as evidence when it is accurate, reliable and will "assist the factfinder in understanding the evidence."). The Government's use of the proposed summary charts is reasonable and proper and, accordingly, should be permitted.

The Government also intends to show the jury several summary charts that will not be

-12-

offered as independent exhibits.  Several such charts concern the earnings of the defendants at

Shoreline Mitsubishi through salaries and commissions.  The Government also intends to show

the jury an organizational chart involving the various players at Shoreline Mitsubishi as well as a

demonstrative aid depicting the use of interstate wires in the credit application process.  "[T]he

use of charts as 'pedagogical' devices intended to present the government's version of the case is

within the bounds of the trial court's discretion to control the presentation of evidence under Rule

611(a) [of the Federal Rules of Evidence].  Such demonstrative aids typically are permissible to

assist the jury in evaluating the evidence, provided the jury is forewarned that the charts are not

independent evidence."  United States v. Taylor, 210 F.3d 311, 315 (5th Cir. 2000) (citations and

footnotes omitted).  "Additionally, such charts are not admitted into evidence and should not go

to the jury room absent consent of the parties."  Id.  The Government submits that it is within the

Court's discretion to permit the Government to use the above-described demonstrative aids and

charts in this case and that allowing the Government to do so will assist the jurors in their role as

the finder of fact.

> G.    Background Testimony Concerning The Initiation of The Investigation

Although hearsay is generally inadmissible, courts have repeatedly held that out-of-court

statements are admissible for the purpose of establishing background information as to why the

Government began an investigation. See, e.g., United States v. Forrester 60 F.3d 52, 59 (2d Cir.

1995); United States v. Lubrano, 529 F.2d 633, 637 (2d Cir. 1975); United States v. Valencia,

957 F.2d 1189, 1198 (5th Cir. 1992); United States v. Gonzalez, 967 F.2d 1032, 1035 (5th Cir.

1992); United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987).  As the court in Freeman

explained:

> Whether or not the . . . statement was true, the fact that it was made would surely explain the flurry of investigative activity . . . the jury was soon to hear about.  For this purpose, outlining the background of the investigation with the evidence not being offered to prove its truth, it could not be said to be nonadmissible hearsay.

Freeman, 816 F.2d at 563.

Accordingly, the Government will seek to present limited testimony concerning statements of individuals that caused the Branford Police Department to begin its investigation of the defendants, as well as statements to the United States Secret Service and the FBI that caused them to further investigate the matter.  These statements will be offered to put in context the early part of the investigation and the progression of events that led to the execution of the search warrant in September of 2002.  See United States v. Regan, 103 F.3d 1072, 1082-83 (2d Cir. 1997) ("the allegations of misconduct . . . were not offered for their truth, but simply as 'background evidence' of the events that led to the investigation").

H.    Statements Made By David Brown and Nelson Datil Are Admissible

The Government will seek to admit through law enforcement witnesses statements made by Defendants David Brown and Nelson Datil.  These statements are non-hearsay statements and accordingly are admissible.

First, as to David Brown, the Government will offer statements made by David Brown to Detective Kevin Potter of the Branford Police Department and to Special Agent Matthew O'Neill of the U.S. Secret Service.  In these statements David Brown said in sum and substance that while he was not involved in the illegal activity at Shoreline Mitsubishi, he knew that others at Shoreline Mitsubishi were committing fraud and were corrupt.  In offering these statements, the Government will show that Defendant David Brown made false representations to the

-14-

authorities, from which the jury could infer a consciousness of guilt, and hence guilt. In these circumstances, the statement obviously is not offered for the truth of the matter asserted, and therefore is non-hearsay under Rule 801(c), as well as non-hearsay under Rule 801(d)(2)(A) as the statement of an opposing party. United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). Additionally, the Government may use the second portion of the statement to establish the truth of the matter asserted, namely that individuals at the dealership were committing fraud and were corrupt. In this circumstance, under Rule 801(d)(2)(A) the statement is not hearsay, because it is simply a statement of the opposing party. Id. Thus, regardless of which purpose (or both purposes) that the Government has in offering Defendant David Brown's statement, the statement as offered will not be hearsay.

Similarly, Defendant Nelson Datil provided a statement to Detective Potter in which he admitted in essence that after he had worked at Shoreline Mitsubishi for a period of time, he knew that figures would be changed on credit applications in order to qualify persons to buy a vehicle who would not ordinarily be able to purchase a vehicle. Datil stated that he was aware that others at the dealership would change incomes, rents and other information, although he claimed that was not involved in changing these numbers. He also admitted that figures were changed for particular deals, but that he was not directly involved. Additionally, Datil told Detective Potter that he knew one customer did not have a job when he purchased a car, although his credit application indicated he did have employment. As discussed above, these statements by Defendant Datil will be offered as non-hearsay. In the first instance, Datil's statement that individuals at the dealership were changing numbers is admissible under Rule 801(d)(2)(A) because it is simply a statement of an opposing party. Additionally, Defendant Datil's statements

that he was not involved or not directly involved will not be offered for the truth of the matter asserted, and therefore is non-hearsay under Rule 801(c), as well as non-hearsay under Rule 801(d)(2)(A).   Finally, the statement that Defendant Datil knew the customer did not have a job when he purchased the car will be offered to show Datil's state of mind and knowledge of the conspiracy, not for the truth of the matter asserted.

Finally, these statements on their face are sufficiently neutral as to the declarants' co-defendants, that they do not run afoul of <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and its progeny.  As the Court is well aware, the Second Circuit and courts in other circuits "have uniformly admitted confessions which have been redacted to replace the names of co-defendants with pronouns or similarly neutral words in cases decided after <u>Richardson</u> [<u>v. Marsh</u>, 481 U.S. 200, (1987)]." <u>United States v. Rucker</u>, 32 F. Supp.2d 545, 550 (E.D.N.Y. 1999).  <u>Accord</u> <u>United States v. Williams</u> 936 F.2d 698 (2d Cir. 1991).  In <u>Williams</u>, the confession was redacted to replace the name of the defendant with the word "guy."  Here the statements themselves do not mention, by name, any particular co-conspirator or any particular defendant.  Thus they do not need to be sanitized and can be admitted against Defendant David Brown and against Defendant Datil, respectively, without any prejudicial spillover to the other defendants.

I.    Non-Admission of Self-Serving Hearsay

The United States will seek to prevent the defendants from introducing through other witnesses any statements that they allegedly made.  In short, the defendants cannot offer their own prior statements through other witnesses in order to avoid taking the stand.  Rule 801(d)(2)(A) of the Federal Rules of Evidence excludes from the definition of hearsay "admissions by a party-opponent," but only if these admissions are "<u>offered against a party</u>."

Fed. R. Evid. 801(d)(2)(A)(emphasis added). "Obviously, a prior statement of a party offered by that party is not an admission of a party opponent." Wright, Miller and Graham, Federal Practice and Procedure: Evidence § 7015 (Interim Edition). Accordingly, the defendants cannot offer their own prior statements to prove the truth of the matter asserted. As the Second Circuit has articulated, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). Accord United States v. Waters, 194 F.2d 926, 930-31 (8th Cir. 1999).

The defendants may not avoid taking the stand by calling witnesses and asking their own witnesses to describe what the defendants themselves said in their own defense. For example, other salesmen or managers from Shoreline Mitsubishi cannot be called to testify regarding alleged statements that the defendants made in support of the argument that they did not know that credit applications were being falsified or that bogus customer information was being wired to MMCA. Such testimony would be offered for the truth of the matter asserted and would constitute inadmissible hearsay.

     J.     Rule 609 of the Federal Rules of Evidence Precludes the Introduction of the Criminal History of a Number of Government Witnesses

Several Government witnesses have at least some prior criminal history. The Government has provided the defense with discovery concerning the criminal history of the Government's witnesses. The Government wishes to point out that much of the criminal history of its witnesses is inadmissible under Fed. R. Evid. 609, inasmuch as they are misdemeanors not involving crimes of dishonesty. In addition, convictions that are more than ten years old are generally not admissible under Rule 609(b). To be sure, several of the Government's witnesses

have felony convictions and/or misdemeanor convictions for crimes of dishonesty that are less than ten years old.  In general, those convictions are fair game for impeachment, although the Government reserves the right to object to such impeachment in specific instances under Fed. R. Evid. 403.  <u>See</u> Fed. R. Evid. 609(a)(1) (evidence that a witness other than an accused has been convicted of a felony, subject to Rule 403).

> K.    If the Defendants Testify, the Government Will Seek to Introduce Their Criminal History to the Extent it is Relevant

Defendants Datil, David Brown and Richard Brown have criminal convictions on their records.  The Government will not seek to introduce evidence in its case-in-chief concerning such convictions or any other arrests or other uncharged "bad acts" (with the exception of the acts that are admissible under Fed. R. Evid. 404(b) and set out in the Government's response to the various pre-trial motions).  However, to the extent any of the defendants elect to testify in their own defense, the Government may well seek to impeach those defendants with the facts of their prior convictions to the extent permitted under Fed. R. Evid. 609.  Specifically, the Government may seek to introduce evidence that both David Brown and Richard Brown have larceny convictions that, while more than 10 years old, are admissible against a testifying defendant because larceny is a crime of dishonesty.  The Government considers this notice to Defendants David Brown and Richard Brown under Fed. R. Evid. 609 of its intention to impeach both David Brown and Richard Brown with the fact of their prior convictions.

> L.    The Government May Seek a Conscious Avoidance Instruction If Appropriate

"The conscious avoidance doctrine provides that a defendant's knowledge of a fact required to prove the defendant's guilt may be found when the jury 'is persuaded that the

defendant consciously avoided learning that fact while aware of a high probability of its existence.'" <u>United States v. Samaria</u>, 239 F.3d 228, 239 (2d Cir. 2001) (quoting <u>United States v. Finkelstein</u>, 229 F.3d 90, 95 (2d Cir. 2000)). "In such circumstances, a conscious avoidance instruction to the jury 'permits a finding of knowledge even where there is no evidence that the defendant possessed actual knowledge.'" <u>Id.</u> (quoting <u>United States v. Ferrarini</u>, 219 F.3d 145, 154 (2d Cir. 2000)).

The Government anticipates that some of the defendants may argue through counsel that although they were employed at Shoreline Mitsubishi during a portion of the conspiracy and although they earned substantial income during the life of the scheme, they had no knowledge of the criminal activity. If that indeed is the nature of one or more defendants' defense, the Government may seek a conscious avoidance or deliberate ignorance instruction. <u>See United States v. Tropeano</u>, 252 F.3d 653, 660 (2d Cir. 2001) (upholding conviction on a conscious avoidance charge); <u>Ferrarini</u>, 219 F.3d at 156 (upholding conspiracy conviction where instructions permitted the jury to infer only "knowledge of the unlawful objectives of the conspiracy" from conscious avoidance); <u>United States v. Eltayib</u>, 88 F.3d 157, 170 (2d Cir. 1996) (same); <u>United States v. Lanza</u>, 790 F.2d 1015, 1023 (2d Cir. 1986) (finding "a conscious avoidance charge . . . appropriate vis-a-vis knowledge of the objectives of the scheme"). "[O]ne who deliberately avoided knowing the wrongful nature of his conduct is as culpable as one who knew." <u>Finkelstein</u>, 229 F.3d at 95. The defendants' conscious avoidance of knowledge of the unlawful aims of the conspiracy thus may be invoked as the equivalent of knowledge of those unlawful aims. <u>United States v. Svoboda</u>, 347 F.3d 471, 480 (2d Cir. 2003).

M.    Aiding And Abetting And Causing: 18 U.S.C. § 2

In addition to the substantive counts, the defendants are also charged pursuant to Section 2 of Title 18 which provides that whoever "aids, abets, counsels, induces or procures," the commission of an offense against the United States "is punishable as a principal."  18 U.S.C. § 2(a).  The statute also punishes as a principal whoever causes an act to be done which if directly performed by him or another would be an offense. Id. § 2(b).

To prove aiding and abetting, "the evidence must demonstrate that the defendant joined and shared in the underlying criminal endeavor and that his efforts contributed to its success." United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996).  See United States v. Zambrano, 776 F.2d 1091, 1097 (2d Cir. 1985).  Accord United States v. Burton, 126 F.3d 666, 670 (5th Cir. 1997).  As the Second Circuit articulated in United States v. Smith, 198 F.3d 377 (2d Cir. 1999), "aiding and abetting 'does not constitute a discrete criminal offense but only serves as a more particularized way of identifying persons involved.'" United States v. Smith, 198 F.3d 377, 382 (2d Cir. 1999) (quoting United States v. Oates, 560 F.2d 45, 54 (2d Cir.1977) and United States v. Campbell, 426 F.2d 547, 553 (2d Cir.1970)).  "When a person is charged with aiding and abetting the commission of a substantive offense, the 'crime charged' is ... the substantive offense itself." Smith, 198 F.3d at 382.  To establish that a defendant is an aider and abettor, the Government must establish that the defendant knowingly and deliberately associated with a criminal venture and participated in it as he would in something he wished to bring about. United States v. Colwell, 764 F.2d 1071, 1072 (5th Cir. 1986).

In addition, the Government must show that the crime was committed by someone as a principal.  United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996); United States v. Harper, 579

F.2d 1235, 1239 (10th Cir. 1978).  However, proving that a specific person is the principal is not

an element of the crime of aiding and abetting.  It is not even essential that the identity of the

principal be established.  The prosecution only need prove that the offense has been committed.

Id.  Further, one who causes an innocent person to commit an act which, if done with the

requisite intent, would constitute a crime may be found guilty as a principal.   18 U.S.C. § 2(a).

See United States v. Gleason, 616 F.2d 2, 20 (2d Cir. 1979). "Causes" as used in section 2(b) has

been defined as "a principal acting through an agent or one who procures or brings about the

commission of a crime."  United States v. Levine, 457 F.2d 1186, 1188 (10th Cir. 1972).

Accordingly, where a manager such as Angel Hernandez instituted a policy and procedure

and pursuant to that policy he directed other employees to submit false and fraudulent credit

applications to MMCA, he is guilty of wire fraud as if he were the principal.  Additionally, where

a salesman caused a fellow employee (either one who was charged or one who was not charged)

to wire a false credit application to MMCA, this still would impute the conduct to that

salesperson.

## CONCLUSION

The United States respectfully submits this Trial Memorandum with the belief that it will

aid the Court in its rulings regarding the legal and evidentiary issues that may arise in the trial of

this case.

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent by facsimile transmission, this 11th

day of April 2005, to the following counsel of record:

(860) 257-3498 (fax)
Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109
(counsel for David Brown)

624-1308 (fax)
Michael S. Hillis, Esq.
Dombroski Knapsack & Hillis LLC
129 Whitney Avenue
New Haven, CT 06511
(counsel for Richard Brown)

481-8562 (fax)
Jeffrey Olgin, Esq.
74 Rose Hill Rd.
Branford, CT 06405
(counsel for Angel Hernandez)

782-1721 (fax)
Jonathan J. Einhorn, Esq.
412 Orange Street
New Haven, CT 06511
(counsel for Nelson Datil)

_____
MICHAEL S. McGARRY
ASSISTANT U.S. ATTORNEY