UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| PLAINTIFF ) | CRIMINAL NO.: 3:02cr341 (EBB) |
| V. | |
| ) | November 7, 2005 |
| NELSON DATIL ) | |
| DEFENDANT ) | |

## DEFENDANT NELSON DATIL'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL

The Defendant, NELSON DATIL has moved for a Judgment of Acquittal or for new trial, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.

A.  FACTS

The Defendant, **NELSON DATIL** was charged in a Fourth Superseding Indictment in Counts One, Nine, Fourteen, Nineteen, Twenty and Twenty-Two, alleging violations of 18 U.S.C. §371. The First Count alleged that he conspired with his co-defendants and others in a scheme to defraud Mitsubishi Motors Credit Corporation ("MMCA") and others through use of wire and mail. The Government alleged that the defendant violated 18 U.S.C. §1343 and 18U.S.C.§2(a), 2(b) (Counts Nine, Fourteen, Nineteen and Twenty), in that he committed and aided and abetted in the commission of wire fraud: as well as, alleging that the defendant violated 18 U.S.C. §1341 and 18 U.S.C. §2(a), 2(b) (Count Twenty-Two), in that he committed and aided and abetted in the commission of mail fraud.

The indictment states that from February 2000 and July of 2002, Shoreline Mitsubishi and its employees, including the Defendant, NELSON DATIL, engaged in a 'scheme to

defraud" to obtain financial gain from MMCA and/or its customers, by rewriting customer credit applications, which were originally produced by the customer or which was produced by the salesperson by obtaining said information orally from the customer, and substituting otherwise accurate information with false information in order to obtain financing approval from Mitsubishi Motor Credit Corporation by way of a "FICO" deal.

In addition, the Defendants were accused of using a software system instituted by MMCA, called "Daybreak," to transmit false customer credit information into an electronic format. All of this alleged activity was done through the utilization of the mail and interstate wires through private or commercial carriers.

It was also charged that as part of the conspiracy that in an effort to induce customers, Shoreline Mitsubishi and its employees, including the Defendant, NELSON DATIL, willfully failed to disclose the existence of large "balloon" payments, or misled customers with regard to the terms and conditions of financing. The Defendants allegedly failed to disclose insurance policies and extended service contracts and would charge for optional equipment that were not installed in vehicles.

The trial of the Defendant, **NELSON DATIL,** and his Co-Defendants, was held from August 10, 2005 through August 31, 2005. The jury heard from over fifty (50) witnesses and saw scores of documents. After nearly five (5) days of deliberations, the jury rendered a verdict on September 7, 2005. The Defendant, **NELSON DATIL,** was found guilty as to all Counts charged against him.

B.    ARGUMENT:

**1.    STANDARD OF REVIEW**

Rule 29(a) of the Federal Rules of Criminal Procedure provides, in relevant part:

"The court on motion of a Defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictments or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a Defendant's motion for judgment of acquittal at the close of the evidence offered by the Government is not granted, the Defendant may offer evidence without having reserved the right." Id.

A District Court can enter a judgment of acquittal on the grounds of insufficient evidence only if, after viewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution and drawing all reasonable inferences in the Government's favor, it concludes no rational trier of fact could have found the Defendant guilty beyond a reasonable doubt. See, Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States vs. Reyes, 302 F.2d 48, 52-53 (2002); also see, United States vs. Walker, 191 F.3d 326, 333 (2d Cir. 1999); United States vs. James, 239 F.3d 120, 123-24 (2d Cir. 2000). In making a motion for judgment of acquittal, Leslie Morris understands that "a Defendant who challenges the sufficiency of the evidence supporting his conviction 'bears a heavy burden.' United States vs. Finley, 245 F.3d 199, 202 (2d Cir. 2001); see also United States, 194 F.2d 37, 51 (2d Cir. 1999)." United States v. Velasquez, 271 F.3d 364, 370 (2001). Beside the Court viewing the evidence in a light most favorable to the government, the Court must recognize it is the jury's domain to determine the weight of the evidence and the credibility of the witnesses and it is the jury's choice as to competing inferences that can be drawn from the evidence. United States v. Morrison, 153 F.3d, 34, 49 (2d Cir. 1998). As a result, in order to succeed, a Defendant seeking a judgment of acquittal at the close of the Government's case must demonstrate that "no rational trier of fact could [find] the essential

3

elements of the crime charged beyond a reasonable doubt." United States vs. McDermott, 245 F.3d 133, 137 (2d Cir. 2001) (internal quotation marked omitted); *see also*, United States v. Bryce, 208 F.3d 346, 352 (2d Cir. 1999). United States v. Velasquez, *supra*, 271 F.3d at 370.

In making the instant motion, Defendant contends that the evidence of the Government in its case-in-chief, even considered in a light most favorable to it and with all reasonable inferences drawn in its favor, was not sufficient as a matter of law and that no rational trier of fact could find the elements of the charged offenses proven beyond a reasonable doubt. As a result, Defendant's motion for judgment of acquittal must be granted.

2. **ELEMENTS OF THE CRIMES CHARGED**

In order to prove that the Defendant, NELSON DATIL, was guilty of conspiracy to commit wire and mail fraud, the Government must show proof that Datil "'knowingly' engaged in the conspiracy with the 'specific intent to commit the offenses that were the objects of the conspiracy.' "United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999), quoting United States v. Salameh, 152 F.3d 88, 145 (2d Cir. 1998). "Purposeful behavior" is required to establish membership in a conspiracy. See United States v. Chang An-La, 851 F.2d 547, 554 (2d Cir. 1988). "[M}ere association with conspirators is ... insufficient." *Id.*

"The elements of mail or wire fraud are (I) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." United States v. Autuori, 212

4

F.3d 105, 115 (2d Cir. 2000).

"As to the first element, the government was required to prove (I) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant and (iii) the materiality of the misrepresentations." *Id.* (internal citations omitted).

With regard to the second element, "[to show a scheme to defraud, the government must present proof that defendants possessed a fraudulent intent." United States v. Schwartz, 924 F.2d 410 at 420 (2d Cir. 1991); United States v. Starr, 816 F.2d 94 (2d Cir. 1987). "'Essential to a scheme to defraud is fraudulent intent.' *"Id.*, at 116, quoting United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994). "It is not sufficient that Ethel defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims. Instead the proof must demonstrate that the defendant has a 'conscious knowing intent to defraud [and] that the defendant contemplated or intended some harm to the property rights of the victim.' "Autuori, at 116, quoting United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (internal citations omitted), quoting United States v. Leonard, 61 F.3d 1181, 1187 (5t~1 Cir. 1995). In defining "contemplated harm," the Second Circuit stressed that "when we have used that term, we have clearly meant the latter definition (to intend) rather than the former (to think about)." United States v. Gabriel, 125 F.3d 89, 97 (2d Cir. 1997). "Intent to defraud' means to act ... with ... *purpose* of causing some financial property loss to another." *Id.*, quoting United States v. Dinome, 86 F.3d 277, 283-284 (2d Cir. 1996).

As to the third element" '[to be material, the information withheld either must be some independent value or must bear on the ultimate value of the transaction.' "Autuori, at 118, quoting United States v. Mittelstaedt, 31 F.3d 1208, 1217 (2d Cir. 1994). "The fraud statutes are violated by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose." *Id.*

The Defendant, **NELSON DATIL,** submits that the Government failed to present sufficient evidence that would prove that this Defendant had committed an act of wire

and/or mail fraud beyond a reasonable doubt. In order for the Government to prove that the Defendant, **NELSON DATIL,** was involved in a scheme to defraud, Defendant had to possess an intent to defraud. In determining whether NELSON DATIL was a "knowing" and "willing" participant in the conspiracy with specific intent or contemplated harm against the victims, the Court should consider the testimony of his co-employees and cooperating witnesses who testified on behalf of the Government.

3. **SPECIFIC EVIDENCE.**

The Government submitted evidence pertaining to seven different sales incidents, in each of which it is claimed Nelson Datil committed either mail or wire fraud. As a mere salesman, it is agreed that he never used the DAYBREAK system, actually submitted any customer applications of profited from the fraud. He did receive his normal commissions as a salesman.

Although testimony as to Shoreline's use of balloon payments in financial sounded offensive, in fact, balloon payments were part of a financial program authorized and endorsed by Mitsubishi Credit. (Testimony of Steven van Overen, Mitsubishi Credit).

The evidence at trial was clearly that Nelson associated with some of defendants, but only worked at Shoreline Mitsubishi for a ten month period. He was not in management nor in the "inner circle", which included David Brown and Angel Hernandez. His was a situation of being "in the wrong place at the wrong time". Even Bruce Vetre indicated that Nelson was a model salesman and he regularly exhorted other salesmen to have their paperwork as complete as Nelson's.

The evidence against Nelson is based solely upon the testimony of certain customers, most of whom had anything negative to say about Nelson.[1] All admitted that the contracts themselves were the product of persons other than Nelson, in a back room or office. The only evidence proferred at trial that might indicate that Nelson knew of the ongoing criminal

---

[1] That there was pending civil actions by the testifying consumers was significant in establishing their financial incentive for bolstering their memory as to the events at Shoreline

6

conduct at Shoreline was the testimony that he might have been present at a Saturday morning meeting where "doctoring" loan applications was discussed.[2]

    a.    <u>Bienvedo Montalvo</u>

Mr. Montalvo and his wife bought a car for their son who had just been released from jail. They were referred to Shoreline by their niece, Melissa Bailey, who was a satisfied customer. Mrs. Montalvo testified that her income was over-stated on the loan application. She could not say who did this or who signed her name. She did not talk to Nelson about her income.

At trial, Mr. Montalvo admitted that the balloon and other disclosures were in the contract documents but he did not read them. "It's my fault", he said at trial. Although many vehicles were repossessed by Mitsubishi Credit, the Montalvo car was not and resulted in a profit for Mitsubishi.

    b.    <u>Juanita Binns</u>

According to Ms. Binns, Nelson Datil merely took her application when he came to the dealership and he was good to her. She has no idea who filled in blanks on his paperwork: it was someone in a "cubicle". She was rushed by someone named "Paul" and didn't read the documents closely. She could not blame Nelson for her balloon payment or monthly salary overstatement.

    c.    <u>Melissa Bailey/Maria Ramos</u>

Melissa Bailey had trouble obtaining a co-signer for his car loan and asked Nelson to drive her to her grandmother's house (Maria Ramos), in Hartford. No witness testified that Nelson altered any reports or documents pertaining to her or her grandmother. Apparently her income was overstated, but there is no evidence that Nelson caused this to occur or knew of it. She was a satisfied customer and even referred two other customers to

---

[2] Bruce Vetre could not recall seeing Nelson at those Saturday morning meetings.

Shoreline, for which she received referral fees of one month car payment in each case. She has a criminal record. (Tr. P. 57, 8-18-05). She testified that Bruce Vetre explained the documentation to her and she read and signed it.

### d.  Mary Jane Best

Mary Jane Best dealt with Paul Fritz (the "big guy at the desk"; Tr. P. 167, 8-18-05), as to the purchase and finance documents. Her income was over stated, but she cannot say that Nelson Datil caused this or participated in that fraud. She testified that Nelson told her that she needed the optional credit life insurance, but agreed that since there were several other insurances involved in the purchase she could be confused. She wanted a service contract and one was included. She agreed that she did not read the documents carefully but signed them. (Tr. P. 164, 8-18-05).

### e.  Lisa Eng

A nurse by trade, Lisa Eng testified that she did not read the finance and purchase documents. She said she was in a "big rush", but also testified that she was at the dealership for several hours(?). The signature of a "Manny" is on her finance documents. She sat down with a Jose Conception to review her documents and he told her to sign them. (Tr. P. 49, 8-22-05). She signed all the documents which disclosed a balloon payment. (Tr. P. 54-58, 8-22-05). It was not her first car purchase, but she never discussed or negotiated the purchase price with Nelson. (Tr. 62, 8-22-05). She agreed that it "partially her fault for not reading the documents. (Tr P. 63-64, 8-22-05). Her rent was also inaccurate but she does not accuse Nelson of these false figures. (Tr. P. 66, 8-22-05). Nelson didn't rush her. (Tr. P. 68, 8-22-05).

### f.  Royce Sullivan

Mr. Sullivan had nothing negative to say about Nelson, but testified that his earnings were overstated, as he was unemployed when purchasing his vehicle. Interestingly, he

received $1427.00 as a cash payment on the purchase of the car and proceeded to never make a single finance payment on it over two years! He actually made money on the transaction. He testified he got divorced over the car issue (that is, purchasing a sports car over a family car).

### g.  Other Employees

Other Shoreline Employees testified, with none implicating Nelson Datil or indicating that he had any knowledge of the dealership's illegal practices. While many either committed fraudulent acts or witnessed fraudulent acts being committed by others, no witnessed or could testify to any fraudulent acts being committed by Nelson Datil. Their testimony is insufficient to convict him. Generally speaking, their testimony was that the sales managers altered the contracts and sent the false information to Mitsubishi.

### 3.  CONCLUSION

As to each of these complainants and transactions, there is a reasonable doubt as to whether Nelson Datil had any knowledge of the fraud perpetrated on the consumer or Mitsubishi Credit. Certainly, his co-workers, in particularly the business managers knew what was happening. Their knowledge, however was not enough to convict Nelson Datil of wire fraud or mail fraud. There is no evidence that Nelson Datil conspired with any person to defraud these or   any other persons.

The reason for the conviction was the government's misconduct in closing argument. Waiting until closing argument to draw the juror's attention to handwriting on various documents and then claiming it belonged to Nelson Datil, with no expert testimony, raised a new issue for the jury. Obviously, with the trial over, the defendant could not address it by fact or other testimony.  When in rebuttal, the government commented on the failure of the defendant and his counsel to deny the ownership of the handwriting[3], it was impermissible violation of his Fifth Amendment Rights. Although the Court read a curative

---

[3] Tr. P. 247, 8-30-05. "Now you saw the documents that Mr. Biran put in front of you that show that it appears as Mr. Datil's handwriting. And Mr. Einhorn did not deny that it was his handwriting…"

instruction in her charge, the lay jury had to believe that the handwriting belonged to the defendant absent his denial, as suggested by the Government.

The defendant respectfully moves that the court acquit him of the counts of the indictment directed to him, based upon the insufficiency of the evidence and the government's misconduct, as aforesaid.

                                                    THE DEFENDANT
                                                    NELSON DATIL

                                                    BY_____
                                                    JONATHAN J. EINHORN
                                                    412 Orange Street
                                                    New Haven, CT. 06511
                                                    203-777-3777
                                                    Fed. Bar. Ct.000163

10

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was mailed, postage prepaid, this 7th day of November, 2005 to:

Michael I. Hillis, Esq.
Dombroski, Knapsack & Hillis, LLC
205 Whitney Avenue
New Haven, Connecticut 06511

Jonathan Biran, Esq.
Assistant United States Attorney
P.O. Box 1824
New Haven, Connecticut 06508

Kurt Zimmermann, Esq.
Silverstein & Osach, P.C.
234 Church Street
New Haven, Connecticut 06510

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, Connecticut 06103

_____
JONATHAN J. EINHORN