UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT
_____

UNITED STATES OF AMERICA                          NO. 3:02CR341 (EBB)

VS.

NELSON DATIL                                      MARCH 28, 2007

### DEFENDANT'S SENTENCING MEMORANDUM

#### I.     Background

The Defendant was found of conspiracy to commit mail fraud and wire fraud and wire fraud and aiding and abetting in violation of 18 USC 1341 and 1343, by a jury on September 7, 2005 after a lengthy trial. Sentencing has been delayed due to a determination of the amount of loss to the victims. [1]

During the time period of the Shoreline conspiracy, a total of 2,061 cars were sold[2], a total of 247 affidavits were obtained from displeased consumers on those sales and 29 transactions were offered at trial[3]. During the 10 months when he was employed at Shoreline, Nelson Datil dealt with six consumers who testified that their contracts were fraudulent.

#### II.    Defendant's Guideline Range

Although the Defendant was admittedly only a short term minor player in the Shoreline Motors conspiracy (he was a salesman), the probation office has calculated the loss attributable to him at $3.39 million.[4] This raises his base offense by 18 levels in accordance with Guidelines 2B1.1(b)(1)(J).  Moreover, probation also awarded the Defendant a 4-level increase in accordance

---

[1] There is also an issue as to whether or not the victims were the consumers or Mitsubishi Motor Credit of America ("MMCA").
[2] See Government's Memorandum in Aid of Sentencing, dated 2/7/07, p. 15.
[3] See Government's Memorandum in Aid of Sentencing, dated 2/7/07, p. 6.
[4] See Probation Report ("PSR"), par. 61.

with guidelines 2B1.1(b)(2)(B), as the entire conspiracy involved more than 50 persons. [5] The Defendant will argue in this memorandum that these adjustments are inappropriate.

The probation office also places the Defendant in criminal history Category III,[6] which issue the Defendant will also address in this memorandum. Based upon the PSR, Nelson Datil is faced with a Guideline Range of 97 to 121 months.

### III. Facts

Nelson Datil worked as a salesman at Shoreline Motors between October, 2001 and July, 2002. He was not an owner or manager of the business. He was hired because he had previously worked with Bruce Vetre. His gross earnings including salary and commission at the dealership are as follows:

> September 10, 2001 to December 31, 2001:   $22,213.64
>
> January 1, 2002 to August 15, 2002:        $46,282.53

This income included sales contracts which were not the focus of this indictment and were presumably legitimate, or at least without complaint from either consumers or MMCA.[7] The Government argues that during Mr. Datil's employment with the company, 53% of the "total loss" occurred. With no basis for this claim, the government argues that the total loss was $6.4 million and therefore the loss attributable to Nelson Datil should be 53% or $3.39 million.

At a hearing on September 19, 2006, the government attempted to support its claim that the loss to MMCA was $6.4 million. This claim was proffered through a representative of MMCA who was unable to answer any questions as to its derivation. She also admitted that she did not participate in the computation of the "loss". An agent who was not the case agent was no more useful. He merely placed into the record certain exhibits of which he had no actual knowledge. It is admitted that the attorneys for MMCA did offer a letter claiming (without

---

[5] See PSR, par. 62.
[6] See PSR, par. 75.
[7] For this reason, the Government's argument that the loss could be calculated upon the defendant's salary is not reasonably related to the actual loss in this case.

details), that the loss was $6.4 million. However, it was admitted that a portion of the loss was mitigated by the settlement of various consumer lawsuits.[8]

Interestingly, the government offered several alternate theories of valuing the loss.[9] Another government theory placed the gain at the defendants' salaries during the conspiracy. This assumes that every contract they did was fraudulent, an assumption not supported by the facts at trial. Defendants Angel Hernandez and David Brown suggest that due to the government's failure to identify an actual loss, the court should set it at $0.[10] Nelson Datil believes that the loss and restitution as to him is best calculated by adding the sum of the losses from the buyers with whom he dealt and not the $2.7 million to $7 million sought by the government.[11] (It should be noted that the MMCA witness at the loss hearing on 9/19/06 testified to a projected loss of $8 million on the Shoreline portfolio, but without details or basis).

### IV.     Amount of Loss Attributed to the Defendant

The government claims that the Defendants ought to be responsible for the entire loss it claims was suffered by Mitsubishi Motors Credit of America ("MMCA"), which it estimates at $6.5 million. The government also claims that it lost $2.7 million on consumer cases involving Shoreline Credit during this time period which were settled.

Inasmuch as the Defendant, Nelson Datil, was not a member of the conspiracy for the entire time period during which these transactions occurred, it is unreasonable to tag him for the entire amount of the loss. Specifically it is Defendant's position that the amount of the loss attributable to him is only the loss relating to the six (6) transactions where he dealt with consumers personally as a salesman. These were as follows, as per government exhibit AA:

---

[8] Notwithstanding the Court's request that the civil settlement agreements be given to defense counsel, both the government and civil counsel for MMCA have refused to provide the same, citing "confidentiality" reasons.

[9] Although it claims that MMCA "wrote-off" $2.7 million in contracts from Shoreline, both the government and MMCA refuse to divulge the basis of those consumer settlements or the rationale for settling the claims.

[10] See Joint Memorandum of Angel Hernandez and David Brown dated February 2, 2002.

[11] See Government's Reply Memorandum, February 21, 2007, p. 6.

| | | |
|---|---|---|
| 1. | Melissa Bailey and Maria Ramos: | $10,527.04 |
| 2. | Royce Sullivan: (Count 22) | $    0.00[12] |
| 3. | Bienvenido and Carmen Montalvo: (Count 19) | $    0.00[13] |
| 4. | Lisa Eng (Count 14) | $ 2,718.23 |
| 5. | Mary Jane Best (Count 9) | 0.00[14] |
| 6. | Juanita Binns (Count 20) | 0.00[15] |
| | **TOTAL LOSS TO MMCA**: | **$13,245.27** |

## IV.    Victims

The PSR at par. 62 notes that the investigation revealed 515 victims. The author then suggests that a 4 level increase was warranted under Guideline 2B1.1(b)(2)(B). This conclusion would require an act of total speculation on the part of the Court. The jury could have found, based upon the evidence at trial, that there were 6 contracts attributable to Nelson Datil. A total of only 29 contracts were offered as to all defendants, at trial. The 4 level increase would only be applicable if there were 50 or more victims.

## V.    Conclusion

Using a loss calculation of $13,245.27 and no adjustment under 2B1.1(b)(2)(B), Nelson Datil would have a base offense level of 6, and with no other adjustments appropriate, a Total Offense Level of 6. His Criminal History is over represented at CH III (the minor drug offenses have no relationship to this case) and the defendant would request a downward departure to CH II. This would result in a Guidelines Range of 1-7 months in Zone B, where probation is allowed.

Interestingly, of the various Shoreline employees who testified, non implicated Nelson Datil. Even Bruce Vetre testified that he could not recall seeing him at the infamous Saturday morning meetings. Consequently, Nelson Datil could not reasonably know, or be chargeable

---

[12] Sullivan never made a single payment on his car and absconded with it to Texas. The car was subsequently repossessed.

[13] The Montalvo vehicle, unlike many, was not repossessed and actually returned a profit for MMCA.

[14] Many Jane Best testified that she dealt with "the big guy at the desk", and not Datil.

[15] Actually, all Nelson Datil did was take her application and turn it in to the "back room". Ms. Binns did not claim that Nelson Datil participated in the transaction in any other manner, or that he defrauded her.

for the extent of the fraud in any credit applications except those described above.[16] The government's claim that "Shoreline Mitsubishi was drawing its clientele from a subprime consumer base"[17] is no reason to imply that Nelson Datil should reasonably have known of the extent of fraud at Shoreline.

>THE DEFENDANT,
>NELSON DATIL
>
>BY_____
>JONATHAN J. EINHORN, HIS ATTORNEY
>412 ORANGE STREET
>NEW HAVEN, CT 06511/FED. BAR NO.  00163
>203-777-3777

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid this 28th day of March, 2007 to the following:

| Michael McGarry, AUSA | Kurt Zimmermann, Esq. | Robert Mirto, Esq. |
| P.O. Box 1824 | 234 Church Street | 140 Captain Thomas Blvd |
| New Haven, CT  06501 | New Haven, CT 06510 | West Haven, CT 06516 |

Joseph Montessi, Probation Officer
U.S. District Court
141 Church Street
New Haven, CT  06510

>_____
>JONATHAN J. EINHORN

---

[16] Granted that he probably heard, along with rest of New Haven County, the radio commercials offering cars for no money down. However, that promise seems common to car dealers these days and appears regularly on television, radio and other media.

[17] See Government's Opposition, dated July 5, 2006, p. 18.